In re TIP–PA–HANS ENTERPRISES, INC. t/a Franklin Electrical Supply, Debtor.

TIP–PA–HANS ENTERPRISES, INC., t/a Franklin Electrical Supply, Plaintiff,

v.

ATCO ELECTRIC COMPANY, INC., Defendant.

Bankruptcy No. 7–82–00834.
Adv. No. 7–82–0792.

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Feb. 23, 1983.

Robert W. Goodlatte, Roanoke, Va., for debtor.

J.M. Maurizi, Balzarini, Carey & Maurizi, Pittsburg, Pa., Jack V. Place, Jolly, Place, Fralin & Prillaman, Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

This adversary proceeding is a "related" proceeding as defined by 28 U.S.C. § 1471 within which the jurisdiction of this Court has now been declared unconstitutional. The Complaint seeks recovery and judgment upon a claim against the Defendant by the Debtor.

Pursuant to the Order of the United States Court of Appeals for the Fourth Circuit as directed by the Judicial Conference of the United States, the District Court for this district on December 24, 1982, entered a local "Emergency Rule" (Rule). The purpose of this rule is to implement procedure brought about by the United States Supreme Court's refusal to extend the stay which expired December 24, 1982, in its recent case of *Northern Pipeline, etc. v. Marathon Pipe Line, etc.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598, 9 B.C.D. 67, C.C.H. Bankruptcy Reports 68, 268 (1982).

As provided by Section (g)[1] of the Rule, this Court heretofore transferred to the District Court this proceeding which it determined to fall within the ambit of *Northern Pipeline.* To the extent that proceedings or contested matters do not fall within the holding of the Supreme Court in that decision, this Court has tried to hear, determine, and otherwise function in appropriate manner to avoid irreparable harm to the litigants' interests and utter chaos in proceedings and cases administered since the stay expired December 24, 1982.

This adversary proceeding has been retransferred[2] by the District Court to this Court for hearings under the "Rule". Paragraph "(g)" of the "Rule" excludes matters falling within the decision in *Northern*

*Pipeline* and leaves this Court devoid of any jurisdiction to so hear since the grant of jurisdiction under 28 U.S.C. § 1471 is unconstitutional.[3]

The return of this case, as well as others, presents this Court dilemmas of considerable magnitude. Presented likewise are several alternatives: (1) What decision-making process can be undertaken within the emasculating effect the Northern Pipeline decision has upon the jurisdictional functions of this Court? (2) What is the potential for liability of a court of limited jurisdiction acting in an area prohibited by this recent decision? (3) What duty does a judge of such court have under the dilemma presented as to disqualification, recusation or abstention and dismissal?

■ We commence with a principle of utmost importance that the federal courts are courts of limited jurisdiction. Most state courts are courts of general jurisdiction, and the presumption is that they have jurisdiction over a particular controversy unless a showing is made to the contrary. The federal courts, on the other hand, cannot be courts of general jurisdiction. They are empowered to hear only such cases as are within the judicial power of the United States, as defined in the Constitution, and have been entrusted to them by a jurisdic-

---

1. (g) *Bankruptcy Rules and Title IV of Public Law 95–598* Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by SEC. 405(d) of the Act, *to the extent that such Title and Rules are not inconsistent with the holding of Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). (emphasis added)

2. It is indeed burdensome to courts of appeal that mandated and district courts that invoked the "Rule" to cast questionable judgment upon its efficacy. Fortunately, and as this Court is advised, an original petition has been filed in the United States Supreme Court by counsel for Manville Corp., a Chapter 11 Debtor, seeking relief under extraordinary writs of *mandamus* and/or *prohibition* against its operation.

3. "Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and, consequently, the theory of every such government must be that an act of the legislature, repugnant to the Constitution is void. This theory is essentially attached to a written constitution, and is, consequently, to be considered by this Court as one of the fundamental principles of our society. It is not, therefore, to be lost sight of in the further consideration of this subject.

If an act of the Legislature, repugnant to the *Constitution is void, does it, notwithstanding* its invalidity, bind the courts and oblige them to give it effect? Or, in other words, *though it be not law, does it constitute a rule as operative as if it was a law?* This would be to overthrow in fact what was established in theory; and would seem . . . an absurdity too gross to be insisted on." (emphasis added) Marshall, Chief Justice, *Marbury v. Madison* (1803) 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60.

tional grant by Congress. 13 *Wright, etc. Fed.Practice & Procedure* § 3522.

 Because of this unusual nature of the federal courts, and because it would not be simply wrong but indeed an unconstitutional invasion of the powers reserved to the states, if those courts were to entertain cases not within their jurisdiction, the rule is well-settled that the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the jurisdictional competence of such a court. The presumption is that the court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. *Turner v. President, etc. Bank of North America* (1799), 4 U.S. 8, 4 Dall 8, 1 L.Ed. 718. Rule 8(a)(1) F.R.C.P. requires, in the federal system, that a pleading set forth a short and plain statement of the grounds upon which the jurisdiction of the court depends. The reason is clear since federal courts are courts of limited jurisdiction and there is no presumption in favor of jurisdiction and further the basis for jurisdiction must be affirmatively shown. *Hanford v. Davies* (1896) 163 U.S. 273, 16 S.Ct. 1051, 41 L.Ed. 157; *Smith v. McCullough* (1926) 270 U.S. 456, 46 S.Ct. 338, 70 L.Ed. 682; *Bowman v. White* (4th Cir.1968), 388 F.2d 756.

 If facts alleging jurisdiction are challenged, the burden rests upon the party claiming jurisdiction to demonstrate that jurisdiction of the subject matter exists. *McNutt v. G.M.A.C.* (1935) 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135. If a party fails to raise a jurisdictional question, the rule is that the parties cannot confer on a federal court jurisdiction that has not been vested in the court by the Constitution and Congress. The parties cannot waive lack of jurisdiction whether by express consent, *Jackson v. Ashton* (1834) 33 U.S. 148, 8 Pet. 148, 8 L.Ed. 898 or by conduct, *Dred Scott v. Sandford* (1857) 60 U.S. 393, 19 How. 393, 15 L.Ed. 691, *Mitchell v. Maurer* (1934) 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338, nor even by estoppel. *Mansfield, etc. v. Swan* (1884) 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462. The court whether trial or appellate, is obliged to notice want of jurisdiction on its own motion. *Mansfield, etc. v. Swan,* (supra); *Cameron v. Hodges* (1888) 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132; *L & N RR Co. v. Mottley* (1908) 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; *City of Kenosha v. Brono* (1973) 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109. A party who has invoked the jurisdiction of the federal court and is unhappy with its decision may indeed challenge its jurisdiction even after verdict. *American Fire & Cas. Co. v. Finn* (1951) 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, 19 A.L. R.2d 738.

If this Court lacks jurisdiction, is there a potential for liability? Paragraph (g) of the Rule itself excepts and excludes such matters from its operation.

In the recent decision of *Winters National Bank, etc. v. Schear Realty Group, etc.* (Bkrtcy.S.D.Ohio 1982) 25 B.R. 463, 9 B.C.D. 1210, the Court briefly touched on the jurisdiction-liability dilemma stating:

> The Bankruptcy Judges and the District Judges should not obviate the very dire possibility of civil liability of judges themselves ... Despite the general rule that a judge is not civilly liable for acts done in the exercise of the judicial function, the Supreme Court has consistently held that judges of courts of limited jurisdiction (as are all federal courts) are not immune from civil liability where there is no jurisdiction and a lack of jurisdiction over the subject matter is known to the judge. The *Northern Pipeline* decision, no matter how interpreted, puts Bankruptcy Judges ... on notice that 28 U.S.C. § 1471 is unconstitutional.

The caveat to this court and counsel is contained in footnote # 40 of the opinion in *Northern Pipeline* which reminds us that the import of that decision is not a simple open wound requiring a minor suture to close. The import of this footnote places all on notice, to tread upon this judicial quicksand at our own risk.

 It is unquestioned, and has been from the earliest days of the common law, that a judicial officer cannot be called to

account in a civil action for his determinations and acts in his judicial capacity, however erroneous or by whatever motives prompted. *Randall v. Brigham,* 74 U.S. 523, 7 Wall. 523, 19 L.Ed. 285; *Grider v. Tally,* 77 Ala. 422; *Trammell v. Russellville,* 34 Ark. 105; *Tracy v. Williams,* 4 Conn. 107. This rule rests on the highest considerations of public policy, for the integrity of the judiciary demands that the threat of personal liability shall not be held over judicial officers in the discharge of their functions. The people in their Constitution mandated that their courts be so. *Early v. Fitzpatrick,* 161 Ala. 171, 49 So. 686; *Williamson v. Lacy,* 86 Me. 80, 29 A. 943; *Stewart v. Case,* 53 Minn. 62, 54 N.W. 938.

■ It is the principle lying at the foundation of all well ordered jurisprudence that every judge, whether of a higher or lower court, exercising the jurisdiction vested in him by law, and deciding on the rights of others, should act on his own free, unbiased convictions, uninfluenced by any apprehension of consequence. *Pratt v. Gardner,* 2 Cush. (Mass.) 63. To be free from liability the act must have been done by the judge in his judicial capacity in a matter within his jurisdiction. *Lange v. Benedict,* 73 N.Y. 12. Where the court has no jurisdiction of the subject matter, its proceedings are void and the judge can derive no protection from them. *Broom v. Douglass,* 175 Ala. 268, 57 So. 860; *Savacool v. Boughton,* 5 Wend. (N.Y.) 170; *Bigelow v. Stearns,* 19 Johns. (N.Y.) 168. In 46 Am. Jur.2d § 75 P. 145 it is stated: "... all judges, whether of superior or inferior jurisdiction, are liable for their acts if they act entirely without jurisdiction", citing in footnote numerous cases including *Yaselli v. Goff* (Ca. 2) 12 F.2d 396, Aff'd 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395, and *Rammage v. Kendall,* 168 Ky. 26, 181 S.W. 631, stating: "Where the judge acts illegally, outside the limits of his jurisdiction, he becomes a trespasser, and is liable in damages as such." Some courts have held that where courts of special or limited jurisdiction exceed their rightful powers, the whole proceeding is *coram non judice,* and the judge is liable to an action by the party injured. 46 Am. Jur.2d *Judges* § 77.[4]

In *Pratt v. Gardner (supra)* the principle is stated that a judge deciding the rights of others, should act on his own free, unbiased convictions, uninfluenced by any apprehension of consequences. The knowledge or lack of knowledge as to jurisdiction on the part of an acting judge has been factors considered in determining personal liability. 46 Am.Jur.2d *Judges* § 75 wherein it states: "... according to some of the cases, judges cannot be held liable in trespass for acting without jurisdiction, or for exceeding the limits of their authority, where the defect or want of jurisdiction is occasioned by some facts or circumstances applicable to a particular case of which the judge had neither knowledge nor the means of knowledge: that is, if the want of jurisdiction over a particular case is caused by matters of fact, it must be made to appear that they were known, or ought to have been known, to the judge, in order to hold him liable for acts done without jurisdiction." Citing cases.

What absurdity would be projected for a sitting Bankruptcy Judge to contend a lack of knowledge of the Supreme Court's decision in *Northern Pipeline* holding that he lacked jurisdiction? Add the additional fact that under Paragraph "(g)" of the "Rule" the Bankruptcy Judge first determined lack of jurisdiction as the reason to transfer the case to the District Court from whence it has been re-transferred. The question suggests its own answer. What then is the responsibility of a judge under such questionable jurisdiction to disqualify or recuse himself?

■ Every litigant is entitled to nothing less than the cold neutrality of an impartial judge. *Yazoo, etc. R. Co. v. Kirk,* 102 Miss.

---

4. It has been held that a state judge acting in his capacity as such, may be charged criminally for violating the provisions of a federal statute where such judge discriminated against blacks in the selection of jurors for the court in which he presided in Pittsylvania County, Virginia. *Ex parte Virginia* (1880) 100 U.S. 339, 25 L.Ed. 676.

41, 58 So. 710. This principle applies even to the state in criminal cases. *State v. Brown,* 8 Okl.Cr. 40, 126 P. 245. In the absence of prohibitory legislation, the question of interest or bias of a judge is regarded as a private matter and of concern only to the parties to the action. But, when constitutional or statutory provision forbid a judge from acting officially, his action is regarded as transgressing the public policy of the state. Such prohibitions are plainly intended not for the general parties to a suit merely, but for the general interests of justice, by preserving the purity and impartiality of the courts, and the respect and confidence of the people for their decisions. *Carr v. Duhme,* 167 Ind. 76, 78 N.E. 322. The Constitution and laws of the people mandate that judges be so.[5]

English authorities down to the present day, uniformly establish and fortify the doctrine that where courts of special and limited jurisdiction exceed their rightful powers, the whole proceeding is *coram non judice,* and all concerned in such void proceedings are liable to an action by the party injured. *Yates v. Lansing,* 9 Johns (N.Y.) 395. That doctrine prevails still in this country. *Borden v. State,* 11 Ark. 519; *Barkeloo v. Randall,* 4 Blackf. (Ind.) 476; *Piper v. Pearson,* 2 Gray (Mass.) 120; *Yates v. Lansing (supra); Tompkins v. Sands,* 8 Wend. (N.Y.) 462; *Lange v. Benedict,* 73 N.Y. 12.

" . . . , whether a federal judge or justice should disqualify himself because in his opinion he is so related or connected with any party or his attorney as to render it improper for him to sit is a matter confided to the conscience of the particular judge. *MacNeil Bros. Co. v. Cohen* (1 Cir.) 264 F.2d 186.

In all cases involving actual, potential, probable or possible conflicts of interests, a federal judge should reach his own determination as to whether he should recuse himself from a particular case, without calling upon counsel to express their views as to the desirability of his remaining in the case . . ." *Resolution of The Judicial Conference,* Oct. 1971. Even the foregoing admonition is now disapproved as too lax. *See Canon* 3 D *Code of Judicial Conduct;* 28 U.S.C. § 455.

In 28 U.S.C. § 455(b)(4) the Congress of the United States legislated that any judge shall disqualify himself where he knows that he has an interest financially " . . . or any other interest that could be substantially affected by the outcome of the proceeding." § 455(d)(1) defines proceeding thusly: "proceeding" includes pretrial, trial, appellate review or other stages of litigation;" § 455(e) mandates that no judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b).

Is the threat of possible or potential personal civil liability accruing against a bankruptcy judge who acts in a "related proceeding" adjudged unconstitutional by the Supreme Court in *Northern Pipeline,* "any other interest" contemplated by 28 U.S.C. § 455? If so, then the statute prohibits the bankruptcy judge from hearing the matter. Does the local "Rule" supersede the mandate of 28 U.S.C. § 455 thus overriding the specific provisions of the act?

If the judge proceeds to hear the matter, does the possible threat of future civil liability cloud his mental processes when called upon to rule upon questions of pleadings, admissibility or lack of admissibility of

**5.** " . . . it is apparent, that the framers of the Constitution contemplated that instrument as a rule for the government of courts, as well as of the legislature. Why, otherwise, does it direct the judges to take an oath to support it? This oath certainly applies in an especial manner, to their conduct in their official character. How immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support!

The oath of office, too, imposed by the Legislature, is completely demonstrative of the legislative opinion on this subject. It is in these words: "I do solemnly swear that I will administer justice without respect to persons, and do equal right to the poor and to the rich: and that I will faithfully and impartially discharge all the duties incumbent on me . . ." Marshall, C.J. *Marbury v. Madison* (supra).

evidence and making findings of facts and conclusions of law? Would the judge's mental process wonder which litigant would be most likely to seek damages for his knowingly exercising unconstitutional jurisdiction? To discard these questions as not serious is to brush aside the admonition of C.J. Marshall (supra) (footnote 5).

A review of "Rule" § (d)(3)(B)[6] reflects that in related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge. To comply therewith in the re-transferred adversary proceeding at bar, the bankruptcy judge must rule on: (1) pre-trial pleadings and proceedings authorized by the Federal Rules of Bankruptcy Procedure as well as the Federal Rules of Civil Procedure; (2) the manner, admissibility or lack of admissibility of the evidence of the parties; (3) review, weigh and determine the weight given such evidence and make finding of facts therefrom; (4) determine applicable law by accepting or rejecting tendered authorities and make conclusions thereof; (5) and determine and prepare proposed order in accordance therewith.

█ All the foregoing necessarily requires a judicial determination by the bankruptcy judge of the matters at hand and, hence, are "proceedings" within the definition set forth in 28 U.S.C. § 455. Therefore, if the thrust of civil liability is a compelling interest contemplated by 28 U.S.C. § 455 then for a bankruptcy judge to comply with the mandate of the local "Rule" would appear to necessarily transcend the mandate of Congress prescribed in 28 U.S.C. § 455.

One cannot lightly pass over the disqualification and recusal elements enmeshed in these proceedings. It no longer is a question of the personal wishes of the respective bankruptcy judge in question. The law is not so much concerned with the respective rights of judge, litigant, or attorney in any particular cause as it is, a matter of public policy, that the courts shall maintain the confidence of the people. *U'Ren v. Bagley,* 118 Or. 77, 245 P. 1074. The purpose of the rules is to guarantee that no judge shall preside in a case in which he is not wholly free, disinterested, and independent. *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749.

█ The law goes further than requiring an impartial tribunal; it also requires that the tribunal appears to be impartial. *Re Perez,* 194 La. 763, 194 So. 774. Under this aspect of the rule, where the circumstances are such as to create in the mind of a reasonable man a suspicion of bias, there may well be a basis for disqualification though in fact no bias exists. 46 Am.Jur.2d § 86 citing *State v. Deutsch,* 34 N.J. 190, 168 A.2d 12. The disqualification of a judge to sit is a matter confided to the conscience of the particular judge. *MacNeil v. Cohen* (supra). In 46 Am.Jur.2d *Judges* § 97 it is stated: "Thus, it would appear to be a rule of policy, that if there is any doubt or question of the judge being 'interested' in the case, the doubt or question should be resolved in favor of disqualification, rather than qualification of the judge and where a judge has an interest in the result of litigation, it has been held he is disqualified to act even if he acts in good faith without knowledge of the disqualification circumstances..."

Having reviewed the foregoing principles of law expressed by the cited authorities, the ultimate question remains as to what course is to be followed.

Recusal and disqualification because of the potential future civil liability issue would merely multiply the existing chaos. What sitting bankruptcy judge is free from such impediment? Abstention or dismissal under 11 U.S.C. § 305 would, likewise, mul-

---

**6.** Rule (d)(3)(B)

(d) Powers of Bankruptcy Judges

(3)(B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclu-

sions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.

tiply the present uncertainties and bring about delay in the decision-making process to the great detriment of the parties concerned and in contravention of the congressional intent sought to be corrected by the Reform Act of 1978, that litigants have an expeditious and economical conclusion of matters presented. Further to make a determination of the facts and conclusions of law is to adjudicate matters seriously in question so far as the jurisdiction of this Court is concerned.

Accordingly, with the hope that the least disruption of these parties' interests will occur, and to avoid further expensive delay to the litigants and their attorneys and absent specific objections, this Court will schedule a hearing of this matter, receive evidence of the parties upon the issues and submit without recommendation to the District Court for its decision any objections or questions as to the admissibility of evidence, the findings of facts and conclusions of law derived therefrom and for said purpose counsel for the respective parties will be required, at the conclusion of all evidence to tender and file with the Clerk of this Court, their respective proposed findings and conclusions and proposed order in support of their respective views and positions relating to the proceeding, all of which will be submitted to the District Court for its determination. It is so ORDERED.